## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

SOTO-CARO,

    Plaintiff,

        v.

VELEZ-LORENZO, *et al*.,

    Defendants.

**Civil No. 14-1100 (SEC)**

## OPINION & ORDER

Before the Court is a motion to dismiss filed by codefendants Alberto González, Héctor Morales, and James Tuller Cintrón, to which Defendant Eusebio Vélez joined with leave from the Court. See Docket ## 60, 62. Plaintiff timely filed her opposition. Docket # 63. For the reasons that follow, this motion is **GRANTED in part**.

### I.    Background

Plaintiff Jeanette Soto Caro (Plaintiff) is a single mother and works as a police officer in the Police Department for the Commonwealth of Puerto Rico (PRPD). Plaintiff brings this suit alleging that she suffered discrimination and retaliation on account of her gender by her supervisors in the Police Department.

According to the Amended Complaint (the "Complaint"), Plaintiff's ordeal started on August 26, 2011, when her supervisor Lieutenant Eusebio Vélez (Vélez) allegedly began harassing Soto for "always" being late for work. See Docket # 51 at ¶ 10.  Plaintiff countered that she was never late, but instead explained that on some occasions, she arrived just as her shift started because she had to drop off her two children with her mother. In response, Vélez began swearing and yelling, and told

Plaintiff that "if she wanted to be a mother and had two daughters she should not have joined the Puerto Rico Police Department." Id. at ¶ 11-13. To add insult to injury, Vélez assigned Plaintiff to rotating shifts. That is, instead of a fixed schedule, Plaintiff's shifts would start at 4 a.m., 12 p.m. or 8 p.m. Id. at ¶ 12. This "gravely complicated" Plaintiff's parental responsibilities toward her two daughters.

In response, Plaintiff lodged an administrative grievance against Vélez with Captain Héctor Morales (Morales), who was the PRPD's Zone Director, and Colonel Alberto González. Id. at ¶ 14. The Complaint does not specify when this grievance was filed. In any event, sometime after Plaintiff complained to Morales and González, Vélez assigned Plaintiff to so-called "reinforce activities." From what the Court can discern, Vélez apparently assigned Plaintiff to patrol the streets of several towns during their annual events or activities. According to Plaintiff, this assignment is considered a "punishment" by police officers. Id. at ¶ 15.

More than a year after the incident with Vélez, on December 27, 2012, Plaintiff met with Morales and González to address her grievances. In that meeting, Morales allegedly admitted that what Vélez did "was wrong," but stated that "nothing could be done because he had to support his fellow officers." Id. at ¶ 16. Further, in response to Plaintiff's request to be removed from the midday work shift, Morales and González admitted that her request "was reasonable and [...] could be granted." Nevertheless, Morales and González did not act accordingly. They did not alter her rotating shifts, they did not remove her from "reinforce" duties. In addition, Morales ordered Plaintiff to relinquish her firearm. All of this was done because, once Plaintiff's complaint was referred to the Superintendent, Morales and González would have to "wait for his instructions." Id. at ¶ 18. Plaintiff's plight ended when Captain Charles Medina took over as the new District Director, and assigned Plaintiff to a fixed work schedule.

Given Defendants' stonewalling, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) in June 2012. Almost a year later, on May 29, 2013, the EEOC issued its ruling, finding that "there were reasons to

believe that the violation charged by Plaintiff had occurred." Id. at ¶ 24. Months later, the Puerto Rico Police Department issued a document entitled "Conciliation Agreement" in which it informed that it had terminated Vélez from employment. The Police Department's decision to terminate Vélez was based, at least in part, on the result of the EEOC investigation. Id. at ¶ 25.

## II.      Standard of Review

Review of pleadings under Rule 12(b)(6) entails a two-step process. The court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements…[,][and then] take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 7, 11–13 (1st Cir. 2011)). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

## III.      Analysis

As a threshold matter, the Court notes that Plaintiff has either waived or consented to dismiss the following claims: 1) all § 1983 claims based on the 4th and 5th Amendments to the Constitution; 2) the 14th Amendment Due Process Claim; 3) her Title VII claims against the defendants in their individual capacity; 4) all state-law claims against the Commonwealth due to Eleventh Amendment immunity; 5) all claims brought under Article 1802 of the Puerto Rico Civil Code. Docket # 63. They shall be dismissed accordingly.

Pending adjudication are Plaintiff's Title VII claims for discrimination and retaliation against defendants in their official capacity as officers of the PRPD, and her cause of action under the Equal Protection clause of the Constitution. For the reasons

that follow, the Court finds that while Plaintiff's Title VII claims survive, her Equal Protection claim fails as a matter of law.

      A.  <u>Title VII</u>

Plaintiff's Title VII claim against Defendants in their official capacities may be broken down as follows. The first is based on Vélez's comments relating to Plaintiff's status as a mother and police officer, and regarding his subsequent change to Plaintiff's work schedule. In addition, Plaintiff pleads that González and Morales also discriminated against her because, while they acknowledged that what Vélez had done was "wrong," they did nothing to fix or correct the problem. In other words, that they explicitly sanctioned Vélez's conduct. In turn, the second prong of Plaintiff's Title VII claim is based on retaliation. Plaintiff claims that Vélez retaliated against her by sending her to "reinforce activities," which is allegedly seen by PRPD officers "as a punishment." Likewise, Plaintiff claims Morales and González retaliated against her by siding with Velez and by removing her firearm.

Because official-capacity claims are merely "another way of pleading an action against an entity of which an officer is an agent," <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 690, n. 55 (1978), the claims outlined above are actually claims against the Commonwealth of Puerto Rico. Nevertheless, in their motion to dismiss, Defendants only move to dismiss Plaintiff's retaliation claims against Morales and González. In doing so, they leave untouched Plaintiff's claims for direct discrimination against all Defendants in their official capacities, as well as Plaintiff's retaliation claim against Vélez. Because each of these instances may serve as an independent basis of liability against the Commonwealth, these unaddressed claims survive the pleading stage.

Defendants argue that Plaintiff's retaliation claim against Morales and González should be dismissed for failure to exhaust administrative remedies. In support of this argument, Defendants point to the original Charge of Discrimination submitted by Plaintiff to the EEOC on June 29, 2012. <u>See</u> Docket No. 39-1. One of the

information boxes in the Charge instructed Plaintiff to specify the "Employer … or Government Agency" that she believed had discriminated against her. In that box, Plaintiff named the PRPD. Another section asked Plaintiff to check off boxes based on the type of discrimination she believed she had suffered. While Plaintiff placed a checkmark on the box labeled "sex," she left the "retaliation" box blank. Further down in the comments section, Plaintiff explained that she filed the discrimination charge because the PRPD had failed to address the internal complaint for gender discrimination she had filed against Vélez.

Against this background, Defendants argue that Plaintiff is precluded from bringing <u>any</u> claim for retaliation, as she failed to exhaust her administrative remedies pertaining to any such claim. This argument is a nonstarter.

In order to sustain a claim for Title VII retaliation, a plaintiff must adequately plead that (1) she engaged in protected conduct under Title VII; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity. <u>Dressler v. Daniel</u>, 315 F.3d 75, 78 (1st Cir. 2003). According to the First Circuit, "retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency." <u>Clockedile v. New Hampshire Dept. of Corrections</u>, 245 F.3d 1, 6 (1st Cir. 2001). This makes sense, as a claim for retaliation necessarily accrues <u>after</u> the person seeks administrative relief. And that is precisely what happened here. Plaintiff filed her EEOC charge in June 2012. Half a year later, Plaintiff met with Morales and Gonzales, where they ratified Vélez's conduct and refused to provide Plaintiff with relief – which was exactly the basis of Plaintiff's Charge before the EEOC. As a result, Plaintiff need not have exhausted her retaliation claim prior to bringing it before this Court.

As mentioned before, however, Plaintiff also claimed that Morales had retaliated against her by removing her firearm, and that Velez had done the same by assigning her to the "reinforce" duties. But the complaint does not specify when either of these events occurred. With respect to a claim for retaliation, this sequence of

events is critically important. For "a retaliation claim to proceed, the retaliatory act must occur after a plaintiff complains or participates in an investigation, it cannot occur before; otherwise it would not be retaliation for participating in the Title VII process." Colón-Pérez v. Dep't of Health of Puerto Rico, 623 F. Supp. 2d 230, 242 (D.P.R. 2009). Nevertheless, because her retaliation claim survives on other grounds – specifically, that Plaintiff's supervisors sanctioned Vélez's conduct in the December 2012 meeting – the Court shall wait for the parties to address this matter on summary judgment.

For the reasons stated above, the Court finds that Plaintiff's Title VII claims against Defendants in their official capacities survive the pleadings stage. The motion to dismiss is therefore denied.

B. Equal Protection

Defendants move to dismiss the Equal Protection claim on the basis that it is time barred. But the merits of this claim – or lack thereof – provide a sounder basis for dismissal, and so the Court shall proceed accordingly.

The Equal Protection clause of the Fourteenth Amendment to the U.S. Constitution stands for the proposition that "persons similarly situated must be accorded similar governmental treatment." Marrero–Gutierrez v. Molina, 491 F.3d 1, 9 (1st Cir. 2007). To adequately plead an Equal Protection violation, a plaintiff must allege that "compared with others similarly situated, she was selectively treated based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Id.

At bottom, Plaintiff alleges that the PRPD impermissibly discriminated against female officers on the basis of their gender. In support of this conclusion, she avers that Vélez subjected other female police officers to "gender discrimination," but did not discriminate against male police officers. But whether or not any particular incident amounts to "discrimination" is a legal conclusion that must be plausibly supported by factual assertions. Schatz v. Republican State Leadership Comm., 669

F.3d 50, 55 (1st Cir. 2012) (the Rule 12(b)(6) analysis requires a court to "ignore statements in the complaint that simply offer legal labels and conclusions"). Here, the Complaint is utterly devoid of <u>any</u> details concerning Velez's treatment of other police officers. As a result, the Complaint falls far short of establishing a plausible Equal Protection violation.

Even if Plaintiff had described these incidents with non-conclusory factual allegations, the Complaint would still fail. An individual is "similarly situated" to others for equal protection purposes when "a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." <u>Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp.</u>, 246 F.3d 1, 8 (1st Cir. 2001). Here, however, Plaintiff fails to provide <u>any</u> factual background from which the Court may infer that the male co-workers she is using as comparators are, in fact, "similarly situated" to her.

Given this lack of factual development, the Court can only conclude that there is no plausible claim for an Equal Protection violation in this case. This claim shall therefore be dismissed with prejudice.

C.   <u>Plaintiff's state law claims against Defendants in their individual capacities.</u>

Finally, Defendants also move to dismiss Plaintiff's claims brought under Puerto Rico Laws 17 and 69. They point out that Plaintiff's Charge of Discrimination was not addressed against any of the individual defendants, and that no claim was stated under either of these laws. Defendants thus conclude that the Charge did not toll the one-year statute of limitations against these claims, and that they are consequently time barred.

Defendants' argument is as underdeveloped as they come. Nevertheless, the Puerto Rico Supreme Court has squarely held that the filing of an administrative charge before the EEOC effectively tolls the statute of limitations for actions under Puerto Rico Laws 100, 17 and 69. <u>Suarez Ruiz v. Figueroa Colón</u>, 98 TSPR 30 (P.R. Mar. 25, 1998). Since Plaintiff filed this suit within one year after the EEOC issued its

Right to Sue letter, Plaintiff's claim is not time barred. As a result, the motion to dismiss these claims is denied.

IV.     **Conclusion**

For the reasons stated above, the following claims shall be dismissed with prejudice: 1) all § 1983 claims based on the 4th and 5th Amendments to the Constitution; 2) the 14th Amendment Due Process Claim; 3) the Title VII claims against the defendants in their individual capacity; 4) all claims brought under Article 1802 of the Puerto Rico Civil Code; and 5) Plaintiff's Equal Protection claim. Further, Plaintiff's state-law claims against the Commonwealth shall be dismissed without prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of December, 2015.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge